UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS EARL PUTNEY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>GARY SWARTHOUT, Warden,<br><br>　　　　Respondent. | ) Case No.: 1:13-cv-00771-LJO-JLT<br>)<br>) FINDINGS AND RECOMMENDATIONS TO<br>) DENY FIRST AMENDED PETITION FOR WRIT<br>) OF HABEAS CORPUS (Doc. 13)<br>)<br>) ORDER DIRECTING THAT OBJECTIONS BE<br>) FILED WITHIN TWENTY-ONE DAYS<br>) |

In 2010, the court sentenced petitioner to 25-year-to-life under California's Three Strikes law. Petitioner claims he suffered ineffective assistance of counsel at trial when his attorney failed to raise Petitioner's incompetency and seek a hearing on it and by counsel's failure to investigate defenses related to his mental competency, to seek a pela bargain and to present defenses at sentencing related to his mental condition. Finally, Petitioner claims his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. For the reasons set forth below, the Court recommends the petition be **DENIED**.

I.　　**PROCEDURAL HISTORY**

In 2010, Petitioner was convicted in the Fresno County Superior Court of possession of a dirk or dagger. (Cal. Pen. Code § 120220(a)). (Volume I, Clerk's Transcript on Appeal ("Volume CT page"), p. 12). Petitioner admitted two prior "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)). (Id.). As a result, the court

1

sentenced him to 25 years-to-life.

Petitioner appealed to the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction. (Excerpt of Record ("EC") 7). The California Supreme Court did similarly. (Doc. 29, Exh. 1).

## II.   FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

> The following facts are derived from the probation officer's report. The incident occurred at Coalinga State Hospital, a secured maximum security forensic hospital that houses sexually violent predators, mentally disturbed offenders, and state prisoners with mental disorders. On November 19, 2010, hospital police officers observed four inmates engaged in suspicious behavior in the hallway. Officers heard several people yelling and a group of individuals exchanging punches with one another. One of those individuals, Putney's co-defendant, inmate Joseph Taylor, was seen holding a weapon. Taylor refused to drop the weapon when ordered to do so and continued running down the hallway chasing another inmate. Taylor approached an officer and lunged at him with the weapon, striking him in the center abdomen with what officers believed was a knife, and then continued to run down the hallway. Officers deployed pepper spray and eventually subdued Taylor, at which time he was found to be unarmed.
>
> About 30 minutes later, another officer made contact with Putney. Although Putney initially denied having a weapon, officers searched Putney and found a homemade manufactured weapon six inches long on his person. The blade was flat, had a dark tint, and was sharpened on both ends. Putney told an officer he was just protecting his "homey," Taylor, and "I didn't use it, but would have."
>
> According to the probation report, as a juvenile Putney had sustained petitions for arson (§ 452, subd. (b)), vehicle theft (Veh.Code, § 10851) and battery (§§ 242, 243, subd. (c)), and was committed to the California Youth Authority (CYA) in 1987. He was paroled from CYA in November 1988, and in March 1990, was discharged from CYA parole under dishonorable circumstances. One month later, he was arrested and convicted of a misdemeanor weapons charge (former § 12020, subd. (a)). This conviction was followed by a string of arrests and the following convictions: (1) possession of drug paraphernalia (Health & Saf.Code, § 11364) in July 1990; (2) fighting (§ 415) and misdemeanor weapons charge (former § 12020, subd. (a)), in August 1990; and (3) misdemeanor weapons charge (former § 12020, subd. (a)) in September 1990, for which he received two years probation.
>
> Putney's three strike priors arose from offenses committed in 1990. Between June and August 1990, Putney forcibly raped and sodomized two young boys, ages four and nine. The nine-year-old boy suffered anal trauma and internal hemorrhoids as a result of Putney's forcible rape. The four-year-old, who suffered scarring on his anus, related that Putney threatened him, saying "he better not tell." In a psychological evaluation of Putney, performed by Dr. Ronald Byledbal, M.D. in February 1991, Putney was diagnosed as a pedophile. According to Dr. Byledbal, "the pedophilic oriented towards male victims has a higher recidivism and is more recalcitrant to treatment." In 1991, Putney was convicted of three counts of section 288, subdivision (a), and sentenced to 10 years in prison.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

> In 1992, while in prison, Putney was convicted of being a prisoner in possession of a weapon (§ 4502) and sentenced to an additional two years. In February 2003, Putney was found to be a sexually violent predator pursuant to Welfare and Institutions Code section 6600, and ordered to be confined for two years in a state hospital. From 2003 to the present offense, Putney has been under continual commitment at both Coalinga and Atascadero State Hospitals.
>
> Putney told the probation officer that he was placed in foster care when he was nine years old after his grandmother physically abused him and he was left alone at home. Putney said his uncles sexually abused him when he was five and eight. Putney had a history of suicide attempts, beginning at age 12. He attempted suicide in 1991, and again while in prison in 1995 and 1999. Putney stated he had received different diagnoses ranging from bipolar to psychotic and schizophrenic disorders, and he had sometimes seen people and heard voices. At the time of the probation department report, Putney said he was not suicidal and was not receiving medication. In the past he had been off and on medication. He stopped taking medications three months before because he was getting extremely paranoid that the medication was hindering his thoughts and causing nerve damage.
>
> When interviewed by the probation officer on December 29, 2010, Putney said he saw the fight; he did not see Taylor with a weapon and he did not give him one. Putney admitted having a knife himself and said it had been in his possession for over a year. He hid the knife in different places so he would not be caught with it. He claimed he needed a weapon for protection because he had been abused by staff, inmates and police officers over the years.

(ER 7, pp. 3-5).

## III.  DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**IV.    Review of Petitioner's Claims**

Petitioner alleges: (1) ineffective assistance of counsel when counsel failed to declare a doubt regarding Petitioner's competency or to request a hearing on said competency; (2) ineffective assistance of counsel in failing to investigate mental defenses prior to entry of a plea, failure to attempt to plea bargain the case to a reduced sentence, and failure to present and argue mental defenses at sentencing; and, (3) a sentence of 25 years-to-life violates the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 13, pp. 6-7).

    A.    Ineffective Assistance of Counsel (Doubt As To Competency And Hearing)

        1.    The 5th DCA's Opinion.

Putney contends trial counsel rendered constitutionally ineffective assistance by failing to declare a doubt as to his competency and request a competency hearing. As the record contains no substantial evidence of incompetency and nothing to suggest a hearing would be favorable, his claim fails.

In order to successfully claim ineffective assistance of counsel, Putney must prove two components: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (Strickland v. Washington (1984) 466 U.S. 668, 687.)

Putney cannot show deficient performance because there was insufficient evidence of incompetency to trigger counsel's obligation to declare a doubt. Indeed, "If an attorney has doubts about his client's competence but those doubts are not supported by medical reports or substantial evidence, he does not render ineffective assistance by forgoing an evidentiary hearing." (People v. Garcia (2008) 159 Cal.App.4th 163, 172 (Garcia), citing People v. Hill (1967) 67 Cal.2d 105.) "Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances." (People v. Freeman (1994) 8 Cal.4th 450, 509; see also People v. Weaver (2001) 26 Cal.4th 876, 931; People v. Frye (1998) 18 Cal.4th 894, 985, disapproved on another point in People v. Doolin (2009) 45 Cal.4th 390, 421 fn. 22.)

Putney asserts there was ample evidence of mental illness and questionable competence that required defense counsel to seek the advice of an expert to determine whether he was competent. But there is nothing on this record to suggest that Putney's competence was questionable. To establish incompetence, "[t]he evidence must indicate that defendant is incapable of comprehending the charges against him and of cooperating with counsel in his defense." (People v. Dudley (1978) 81 Cal.App.3d 866, 872.) In taking Putney's change of plea, the trial court asked Putney several times whether he understood the consequences of his plea; each time Putney responded that he did. In addition, the trial court specifically asked defense counsel if he was satisfied Putney understood the nature and terms of the plea and its consequences; defense counsel responded "I do, Your Honor." The court painstakingly questioned Putney on each of his constitutional rights to ensure he understood each right he was waiving; Putney answered each question directly and appropriately in the affirmative. Given Putney's responses, his background and history of mental illness do not support a finding of current incompetence. (People v. Hayes (1999) 21 Cal.4th 1211, 1281 ["Evidence regarding past events that does no more than form the basis for speculation regarding possible current incompetence is not sufficient."].)

The record also does not suggest that Putney was incapable of assisting counsel. Putney confirmed to the trial court before taking his change of plea that he had enough time to discuss the issue with his attorney, he understood his attorney adamantly disagreed with his decision, as well as the attorney's reasoning, but he did not agree with it "[f]or personal reasons." Defense counsel also confirmed that he had advised Putney numerous times about the consequences of the plea, which Putney would confirm if asked. At sentencing, defense counsel remarked that while talking with Putney, he found him to be "an intelligent individual." Nothing that occurred during the hearings in this matter suggests that Putney was incapable of comprehending the charges against him or of assisting defense counsel.

Moreover, Putney cannot establish the outcome would have been different if his trial counsel had declared a doubt as to his competency. "[Penal Code s]ection 1368 requires a competency hearing when the court declares a doubt as to competence. [Citation.] The court did not declare a doubt. A declaration of doubt by counsel alone is not sufficient to trigger a statutory right to a competency hearing. Section 1368 is written in terms of whether a doubt arises in the mind of the trial judge and is then confirmed by defense counsel. [Citation.] 'If ... a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall ... inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.' [Citation.] If, in response, 'counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing.' [Citation.] 'A doubt in the mind of counsel, or anyone else other than the trial court is not sufficient to require a hearing on the issue of sanity under the statute.'" (Garcia, supra, 159 Cal.App.4th at pp. 169–170; see also People v. Rodrigues (1994) 8 Cal.4th 1060, 1111–1112 [judge not compelled to order competency hearing based on defense counsel's opinion the defendant might be incompetent; defendant's claim his trial counsel was ineffective for failing to request a competency hearing

failed where record did not demonstrate a substantial doubt as to the defendant's competency].) Given the lack of substantial evidence of Putney's incompetence, there is no reasonable probability the outcome would have been different if counsel had declared a doubt as to his competence.

(ER 7, pp. 5-8).

### 2. Federal Standard For Effective Assistance Of Counsel

The Due Process Clause of the Fourteenth Amendment guarantees effective assistance of counsel. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v.

Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Here, the state court identified the appropriate federal standard by applying Strickland. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of Strickland. For the reasons discussed below, the Court concludes that it was not.

### 3. Federal Standard For Competency

Generally, a person whose "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 172 (1975). The test for competency to stand trial is whether the defendants "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960).

The due process clause requires a state trial court to inquire sua sponte into a defendant's competency if "a reasonable judge would be expected to have a bona fide doubt as to the defendant's competence." Moran v. Godinez, 57 F.3d 690, 695 (9th Cir.1994); see also United States v. Lewis, 991 F.2d 524, 527 (9th Cir.1993); DeKaplany v. Enmoto, 540 F.2d 975, 980-81 (9th Cir. 1976). A bona fide doubt exists if there is "substantial evidence of incompetence." Lewis, 991 F.2d at 527; see also Moran, 57 F.3d at 695. "Evidence is substantial if it raises a reasonable doubt about the defendant's competency to stand trial." DeKaplany, 540 F.2d at 981. "Although no particular facts signal incompetence, suggestive evidence includes a defendant's demeanor before the trial court, previous irrational behavior, and available medical evaluations." Moran, 57 F.3d at 695.

The issue presented on habeas review is not whether Petitioner was incompetent to enter a plea of guilty, admit his prior strikes, and submit to the sentence imposed. See Lewis, 991 F.2d at 527.

Instead, the issue is whether Petitioner was denied the effective assistance of trial counsel for counsel's failure to express a doubt as to Petitioner's competence and to request a hearing regarding Petitioner's competency, which, in turn, would be required only if the state trial court had information before it which should have caused the court to have a bona fide doubt as to Petitioner's competency. See id. In resolving this issue, we examine only the information that was before the state trial court at the time of the pretrial, entry of plea, and sentencing proceedings. Id.

### 4. Analysis

Respondent contends that Petitioner has proffered to the Court evidence that was not before the state court when it considered this issue, i.e., specifically (1) a then three-year-old unpublished decision by a California Court of Appeal upholding a lower court's finding that Petitioner was incompetent to give informed consent to medical treatment using psychotropic medications; (2) a California Department of Mental Health DMH Wellness and Recovery Plan dated March 24, 2010; (3) an evaluation prepared by Dr. Jay Adams, dated January 30, 2009, and (4) an evaluation prepared by Dr. L. C. Miccio-Fonseca, dated May 21, 2007. (Doc. 29, p. 20). Respondent contends this evidence should not be considered in analyzing whether the court's adjudication was objectively unreasonable. (Id.). The Court agrees with Respondent and will not consider this evidence in its analysis.

In Cullen v. Pinholster, 563 U.S. 170 (2011), the United State Supreme Court held that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. The Court held that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." Id., at 182. Thus, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions "against this Court's precedents as of 'the time the state court renders its decision.'" Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)(emphasis in original); Greene v. Fisher, 2011 WL 5335411, no. 10-637, Nov. 8, 2011.

The four documents listed above were not presented to the state court when it considered Petitioner's state habeas petitions; instead, they apparently were proffered for the first time in these

proceedings.[2] Applying Pinholster's holding, this Court cannot consider such evidence since this Court's habeas review is limited to a consideration of the state court record at the time the state court rendered its decision. Pinholster, 563 U.S. at 182.[3]

Analyzing the evidence that was before the state court when it considered this issue, the Court concludes that Petitioner has not established ineffective assistance of counsel under Strickland's "doubly deferential" standard. The 5th DCA set forth the salient facts regarding why no deficient performance was evidenced in the record: the trial judge inquired multiple times whether Petitioner understood the consequences of pleading guilty; Petitioner replied appropriately and affirmatively each time; the court inquired of defense counsel whether he had discussed the relevant circumstances and consequences with his client and counsel confirmed that he had; and the trial court inquired extensively of Petitioner regarding his understanding of giving up certain constitutional rights. Also, Petitioner confirmed that he had discussed pleading guilty with his counsel, that he understood counsel disagreed with him, but that Petitioner had "personal reasons" for pleading guilty. Nothing in any of these circumstances even remotely suggests that Petitioner was incompetent. Moreover, it bears emphasis that Petitioner had a lengthy juvenile and adult criminal history and was not unfamiliar with the legal process. Also, Petitioner had been confined for some years in a setting where he was receiving treatment for his mental issues. Everyone involved was aware that Petitioner had a mental illness

---

[2] Petitioner argues that, because his appellate counsel sought to expand his appointment before the 5th DCA to include competency issues, and the 5th DCA denied that request, Petitioner fits within a narrow exception to Pinholster where the Petitioner's "inability to develop all the facts supporting his claim was the fault of the state court itself." (Doc. 31, p. 15.) This is unpersuasive. First, as Petitioner concedes, the evidence presented to the 5th DCA was "minimal." (Doc. 31, p. 14). Giving due AEDPA deference to the state court's adjudication of its own state rules and law, this Court will not second-guess the 5th DCA's decision based on "minimal" evidence. Second, no explanation has been forthcoming about why counsel did not, upon discovering the four documents at issue here, immediately seek to exhaust them factually in state court rather than risk having them excluded under Pinholster should the Court disagree with counsel regarding whether or not Petitioner fit within some exception to that case.

[3] Petitioner asks that, if the Court holds that Pinholster excludes this evidence from consideration, this Court should grant a stay and abeyance of proceedings to allow Petitioner to exhaust the factual allegations in state court and then include them in the petition upon exhaustion, pursuant to Rhines v. Weber, 544 U.S. 369 (2005). (Doc. 31, p. 3). In Rhines, the U.S. Supreme Court noted that the stay procedure should be "available only in limited circumstances." 544 U.S. at 277. Specifically, the Court said it was appropriate only when (1) good cause exists for petitioner's failure to exhaust; (2) petitioner's unexhausted claims are not "plainly meritless" and (3) there is no indication that petitioner engaged in "abusive litigation tactics or intentional delay." Id. at 277-278; Robbins v. Carey, 481 F.3d 1143, 1149 (9th Cir. 2005). Here, Petitioner has offered no explanation at all, let alone "good cause," for failing to raise this issue in state court despite the fact that this evidence was readily available.

In addition, Petitioner has not shown that the evidence submitted here has any bearing on the issue of ineffective assistance of counsel. Three of the documents were composed several years prior to Petitioner's entry of plea and the most recent was composed approximately nine months before the plea. Given the fact he was receiving ongoing treatment, it is difficult to envision how documents this remote would have any probative value as to Petitioner's competency in December 2010 when he appeared before the trial judge to enter his plea. Accordingly, the Court denies Petitioner's request to stay proceedings to factually exhaust this claim.

history that was being addressed. Under all of these circumstances, as the 5th DCA noted, there was simply insufficient evidence of incompetency to trigger any duty to act on the part of defense counsel. Hence, counsel's performance was not deficient.

Petitioner's argument is based upon Petitioner's history of mental problems, his willingness to plead guilty to a crime that would trigger a Three Strikes sentence, and making several statements about the judge "playing with" Petitioner's intelligence. (Doc. 31, p. 5). As to the latter, counsel characterizes these statements as "quasi-paranoid;" however, from a cold record, such a "diagnosis" is simply insupportable. Many reasons may exist for why Petitioner felt the court was "playing" with him by repeatedly inquiring into his knowledge and understanding of what he was about to do. Although such repeated inquiries may have seemed unnecessary and overbearing to Petitioner and that fact that he was disturbed by the court's such exhaustive inquiries, does not necessarily point to any mental incompetency.

Regarding Petitioner's "alacrity" to plead guilty, the decision was made after full consultation with counsel and with the knowledge that counsel disagreed with that strategy. Again, many reasons may exist for why Petitioner chose to go against counsel's advice and many reasons may exist for why Petitioner chose to do so at that particular point in the proceedings. However, none of those reasons invariably points toward incompetency.

Finally, Petitioner's history of mental troubles was an established fact at the sentencing hearing. As mentioned, Petitioner was confined and undergoing treatment specifically for those troubles. It is circular reasoning to suggest that the mere fact that Petitioner was undergoing treatment establishes his incompetency. If the Court were to presume anything, it would be that Petitioner's years of treatment would have made it far less likely that he was incompetent.

Regarding prejudice, the 5th DCA noted that Petitioner could not show that, had counsel requested a hearing, a better outcome would have been forthcoming because, under California law, defense counsel cannot force a competency hearing. Rather, the trial court must initiate that process based on his or her own perceptions of the defendant's state of mind. The state court concluded that nothing in the record suggested Petitioner's incompetency, and hence the trial judge was under no duty to order such a hearing. Because defense counsel could not himself initiate that process, no prejudice

inured to Petitioner as a result. This is not a close case. The record is simply devoid of evidence that, as of the date of the entry of plea, Petitioner was incompetent. That being the case, counsel's performance could not be deficient for failure to express a doubt about competency.

      B.      Ineffective Assistance Of Counsel (Investigation, Plea Bargaining, And Sentencing)

           1.      Standard of Review

Respondent contends that Petitioner failed to raise this issue in state court and therefore it is unexhausted. Petitioner argues that the claim of inadequate investigation and failure to present evidence of mental incompetence at the plea bargain and sentencing stages, were sufficiently integrated into the first ineffective assistance claim. The Court agrees with Petitioner.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state the initial opportunity to correct the alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity

>to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

>Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident*," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
>In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added), as amended by Lyons v. Crawford, 247 F.3d 904, 904-5 (9th Cir. 2001).

In his Traverse, Petitioner observes that his petition for review before the California Supreme Court expressly referenced not only counsel's failure to express a doubt as to Petitioner's competence but his failure to investigate Petitioner's mental status for purposes of both entering a plea and, subsequently, sentencing under Three Strikes.  (Doc. 31, p. 11).  While sparse, the allegations "fairly present" the issue of ineffective assistance of counsel for failure to investigate Petitioner's mental condition for purposes of trial, plea, and sentencing.  Accordingly, the Court determines the claim is exhausted.

When a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ––– U.S. ––––, ––––, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013).  Moreover, where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003); Greene v. Lambert, 288

13

F.3d 1081, 1089 (9th Cir.2002) (holding that when there is an adjudication on the merits but no reason for the decision, the court must review the complete record to determine whether resolution of the case constitutes an unreasonable application of clearly established federal law); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784.

Because the issue was presented to the state court and the state court did not issue a reasoned decision thereon, this Court will independently review the claim.  In so doing, the Court, for the reasons set forth below, concludes that counsel's performance was not deficient.

2. Analysis.

As mentioned previously, Petitioner was housed in a confined treatment center at the time the events occurred giving rise to his conviction in this case.  Petitioner's mental health history was well-documented and, presumably, well-known to both counsel and the trial judge.  This context is crucial to the Court's determination because the issue is not whether Petitioner was actually suffering some form of mental disability at the time he entered his plea, nor even whether, at the time he entered his plea, he was incompetent, but whether, at the time of the plea, circumstances existed and evidence was available such that no competent attorney would not have proceeded with entry of plea without expressing a doubt as to Petitioner's competency and without seeking to further investigate the issue.

The Court has already answered the question regarding a competency hearing in the negative. Ground Two asks the same question in a slightly different fashion: whether those same facts, circumstances, evidence, and context would have prompted an attorney of reasonable competence to further investigate Petitioner's mental state for purposes of entering a plea and sentencing.

Undoubtedly, reasonable minds could differ on the answer, especially given the lengthy amount of information regarding Petitioner's mental health history that would have been available to counsel. Petitioner has submitted evidence in the form of declarations suggesting that Petitioner was not consistent in taking prescribed medications and that, when not taking medications, he might be incompetent.

The Court's decision cannot be premised upon speculation or conjecture, which it most surely would be if based solely on a lengthy medical history that shows Petitioner's progress and regression over many years, or, as Dr. Halon noted, the "chronic ups and downs of decompensation and recompensation." (Doc. 31, Decl. of Robert L. Halon, p. 3). Petitioner's mental health history, much of which is remote in time, his "alacrity" in changing plea, the "possibility" that he was not taking his medications, and the potential, but unknown, probative value of evidence that may have been produced, but was not  must be weighed against other evidence.  For example, the Court must consider the observations and interactions of the trial judge and defense counsel at the time of the plea, the lengthy questioning of Petitioner by the trial judge regarding the entry of the plea and waiver of constitutional rights, and the deference the Court must give to the state court's adjudication. As mentioned, even upon independent review, the Court can afford habeas relief only when it is apparent that "there was no reasonable basis for the state court to deny relief."  Harrington, 131 S.Ct. at 784.   Weighing these competing considerations, and for the same reasons that the Court concluded that the state court's adjudication of Ground One was not objectively unreasonable, the Court concludes that counsel's failure to conduct a further investigation of Petitioner's mental health for purposes of plea and sentencing was not objectively unreasonable.  Having concluded that counsel's performance was not deficient, the Court need not address prejudice. Strickland, 466 U.S. at 697.

    C.    <u>Cruel and Unusual Punishment</u>

        1.    <u>The 5th DCA's Opinion</u>

We also reject Putney's claim that his 25–year–to–life sentence was constitutionally disproportionate. In determining whether punishment is constitutionally disproportionate, the courts examine the nature of the offense and offender, the punishment the same jurisdiction imposes for other offenses, and the punishment other jurisdictions impose for the same offense. (Solem v. Helm (1983) 463 U.S. 277, 290–291, overruled on another ground by Harmelin v. Michigan (1991) 501 U.S. 957, 964–965; In re Lynch (1972) 8 Cal.3d 410, 425–427.) A punishment involving "unnecessary and wanton infliction of pain" or "grossly out of proportion to the severity of the crime" violates the Eighth Amendment. (Gregg v. Georgia (1976) 428

> U.S. 153, 173.) A punishment "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity" violates article I, section 17 of the California Constitution. (In re Lynch, supra, 8 Cal.3d at p. 424, fn. omitted.)
>
> California statutes imposing harsher punishment on recidivists have long withstood constitutional challenge. (See People v. Weaver (1984) 161 Cal.App.3d 119, 125–126, and cases cited.)  Putney argues his possession of the knife in the present case was a wobbler offense which involved no violence or physical harm, and when considered in conjunction with his background, character, and prior offenses, it is clear that his 25–year–to–life sentence shocks the conscience and is grossly disproportionate. We disagree. The primary goals of a recidivist statute "are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time." (Rummel v. Estelle (1980) 445 U.S. 263, 284–285.) Defining that point in one's life and setting that time are both "matters largely within the discretion of the punishing jurisdiction." (Id. at p. 285.) Putney's sentence constitutes neither cruel and unusual punishment under the federal Constitution nor cruel or unusual punishment under the state Constitution. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17; see Ewing v. California (2003) 538 U.S. 11, 20–31; Lockyer v. Andrade (2003) 538 U.S. 63, 66–77; People v. Martinez (1999) 71 Cal.App.4th 1502, 1516–1517.)

(ER 7, p. 11).

        2.    <u>Federal Standard</u>

The Eighth Amendment prohibits cruel and unusual that is "grossly disproportionate" to the crimes committed. Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (holding that a California state court's affirmance of two consecutive twenty-five-years-to-life sentences for petty theft was not grossly disproportionate and not contrary to nor an unreasonable application of federal law). See also Ewing v. California, 538 U.S. 11 (2003) (holding that a sentence of twenty-five-years-to-life for theft under California's three strikes law was not cruel and unusual punishment); Harmelin v. Michigan, 501 U.S. 957, 961 (1991) (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality);  Rummel v. Estelle, 445 U.S. 263, 271 (1980).

   Outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extremely and grossly disproportionate to the crime. United States v. Bland, 961 F.2d 123, 129 (9th Cir.1992) (quoting Harmelin, 501 U.S. at 1001).  When reviewing an Eighth Amendment claim in a federal habeas corpus petition, the gross disproportionality principle is "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework" under 28 U.S.C. § 2254(d)(1). Lockyer, 538 U.S. at 73.  The "gross disproportionality rule" applies "only in the 'exceedingly rare' and 'extreme' case." Lockyer, 538 U.S. at 72–73; Rummel, 445 U.S. at 272.  So

long as a sentence does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. See United States v. Mejia–Mesa, 153 F.3d 925, 930 (9th Cir.1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir.1990).

In assessing the compliance of a non-capital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. Solem, 463 U.S. 277, 290, 103 S.Ct. 3001 (1983). Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. Id. at 290–91. If "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality," the reviewing court should compare the sentence with sentences imposed on other criminals in the same jurisdiction and for the same crime in other jurisdictions. Harmelin, 501 U.S. at 1005. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." Taylor, 460 F.3d at 1098. If a comparison of the crime and the sentence does not give rise to an inference of gross disproportionality, a comparative analysis is unnecessary. Id.

### 3. Analysis

The Court concludes that no inference of gross disproportionality appears from the present record. As discussed previously, Petitioner had a long juvenile and adult criminal history, including serious sexual assaults and violence while incarcerated. The triggering offense for the Three Strikes sentence, i.e., possession of a dirk or dagger, was based upon conduct that represented a significant threat to the safety and security of inmates, medical staff, and correctional officers alike. The purpose of the Three Strikes law was to enhance sentences for recidivist offenders such as Petitioner. That is precisely how the law functioned in this case. Nothing in the record creates an inference of gross disproportionality. Even assuming that such an inference were justified, a comparison with other cases demonstrates that Petitioner's sentence, while lengthy, was well within the range of recidivist sentences imposed in other cases and approved by the Supreme Court and the Ninth Circuit. See Andrade, 538 U.S. at 77 (denying habeas relief on Eighth Amendment disproportionality challenge to Three Strikes sentence of two consecutive terms of 25 years to life for stealing $150.00 in videotapes when petitioner had a lengthy but nonviolent criminal history); Harmelin, 501 U.S. at 1008–09 (mandatory life sentence

without parole for first offense of possession of more than 650 grams of cocaine is not so disproportionate as to violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 37475, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam) (upholding non-recidivist sentence of two consecutive 25 year prison terms for possession of nine ounces of marijuana and distribution of marijuana); cf. Solem, 463 U.S. at 280–81 (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment).

Moreover, in cases arising on habeas review following the Supreme Court's decisions in Andrade and Ewing, the Ninth Circuit has frequently rejected Eighth Amendment challenges to California's Three Strikes Law sentences. See, e.g., Nunes v. Ramirez–Palmer, 485 F.3d 432, 439 (9th Cir.2007) (sentence of 25 years to life for crime of petty theft with a prior did not offend the Constitution where petitioner had extensive and serious felony record); Taylor v. Lewis, 460 F.3d 1093, 1101–02 (9th Cir. 2006) (no Eighth Amendment violation where petitioner with prior offenses involving violence was sentenced to 25 years to life for possession of .036 grams of cocaine base); Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir.2004) (sentence of 25 years to life for offense of petty theft with a prior imposed on petitioner with two prior robbery convictions was not objectively unreasonable); cf. Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir.2004) (finding that habeas relief was warranted in "exceedingly rare" case where petitioner with minimal criminal history and no prior state prison sentence received a Three Strikes sentence for offense of petty theft with a prior); Gonzalez v. Duncan, 551 F.3d 875 (9th Cir.2008) (life sentence under California's Three Strikes law, triggered by a failure to register as a sex offender, violated the Eighth Amendment proscription against cruel and unusual punishment because there was no "rational relationship" between a failure to register and the probability defendant would recidivate as a violent criminal or sex offender).

Here, Petitioner was sentenced to 25 years to life in prison for possession of a dirk and dagger, and a finding that he previously suffered three prior violent or serious felony convictions. Petitioner's sentence is comparable to that of the defendants in Andrade and Harmelin, and allows for the possibility of parole, unlike Solem. See Andrade, 538 U.S. at 74; Taylor, 460 F.3d at 1098 (eligibility for parole, albeit after 25 years, made California Three Strikes sentence "considerably less severe than

the one invalidated in <u>Solem</u>" ). For the above reasons, and in light of controlling jurisprudence, this Court cannot find that Petitioner's sentence is grossly disproportionate to his commitment offense.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and **filed within 10 days** (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 10, 2016**                        **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE